# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| LENORA HANSEN | Case No. CV 15-CV-00190-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Petitioner Lenora Hansen's Petition for Review (Dkt. 1), filed June 3, 2015, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Petitioner applied for SSDI benefits on July 12, 2011, alleging a disability onset date of May 4, 2011. (AR 9). On that same day she also filed an application under Title XVI for supplemental security income. These claims were denied initially and again on reconsideration on January 24, 2012. (AR 9). Thereafter, Petitioner filed a request for a hearing with an Administrative Law Judge (ALJ), which occurred on July 12, 2013 in Boise, Idaho. (AR 12). (AR 28-48). ALJ John Molleur presided over the hearing, at

**MEMORANDUM DECISION AND ORDER - 1**

which the Petitioner was present and represented by her attorney, Joseph P. Brown.  Beth

Cunningham, an impartial vocational expert, also testified at the hearing. At the time of

the hearing, Petitioner was 46 years old, and had past work experience as an

administrative clerk and a food service worker. (AR 19).

On August 15, 2013, the ALJ issued a decision, denying Petitioner's claims,

finding that she was not disabled within the meaning of the Social Security Act.  (AR 9-

21). Petitioner timely requested review from the Appeals Council on October 17, 2013.

(AR 5.)  The Appeals Council then denied review on April 1, 2015 (AR 1-4), rendering

the ALJ's decision the Commissioner's final decision. Petitioner now seeks judicial

review of the Commissioner's decision to deny benefits, contending that the ALJ erred in

the following ways. First, she alleges that the ALJ erred by failing to identify her chronic

migraine headaches as a "severe impairment" at step two. Second, she argues that the

ALJ erred by concluding that her subjective pain complaints far exceeded any objective

medical evidence, and relatedly, by improperly assessing her credibility. She also argues

that the ALJ erred in rejecting the opinions of her treating neurologist, Dr. Allen Han,

with respect to her level of functional capacity. Finally, Petitioner argues that the ALJ

erred in discounting her morbid obesity and finding that her non-compliance with

treatment for that condition made her credibility suspect. The Court concludes that the

ALJ committed errors in a number of respects, either by failing to apply controlling legal

standards, by mis-characterizing evidence, and by ignoring evidence favorable to the

claimant in such a pronounced manner that not even the generous "substantial evidence"

**MEMORANDUM DECISION AND ORDER - 2**

standard can sustain the decision. For these reasons, which are discussed more thoroughly below, the Court will grant Petitioner's request for review and remand the case for an immediate entry of benefits.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996);  *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a

**MEMORANDUM DECISION AND ORDER - 3**

whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20

**MEMORANDUM DECISION AND ORDER - 4**

C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that the claimant had not engaged in SGA since May 4, 2011, the alleged onset date of the disability. (AR 11).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight

**MEMORANDUM DECISION AND ORDER - 5**

abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: morbid obesity, osteoarthritis of the knees, hip and shoulder, mild degenerative disc disease of the lumbar spine, fibromyalgia, and adjustment disorder. (AR 11). Although Petitioner also had a history of migraine headaches, the ALJ concluded that these were not a severe impairment at step two. (AR 12).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 12-14.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past

**MEMORANDUM DECISION AND ORDER - 6**

relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's

residual functional capacity is her ability to do physical and mental work activities on a

sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545,

416.945.  Likewise, an individual's past relevant work is work performed within the last

15 years or 15 years prior to the date that disability must be established; also, the work

must have lasted long enough for the claimant to learn to do the job and be engaged in

substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

Here, the ALJ determined that the Petitioner had the residual functional capacity to

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the

additional limitation that she was limited to work requiring "uninvolved" three-to-four

step tasks and only brief and incidental interactions with the general public. (AR 14).

In the fifth and final step, if it has been established that a claimant can no longer

perform past relevant work because of his impairments, the burden shifts to the

Commissioner to show that the claimant retains the ability to do alternate work and to

demonstrate that such alternate work exists in significant numbers in the national

economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see

also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do

other work, she is not disabled; if the claimant is not able to do other work and meets the

duration requirement, she is disabled. The ALJ found, at step five, that Petitioner can no

longer perform her past relevant work, but also found that she is capable of making a

successful adjustment to other work that exists in significant numbers in the national

**MEMORANDUM DECISION AND ORDER - 7**

economy. (AR 20).

**B.      Analysis**

**1.      The ALJ Erred by Failing to Find that Claimant's Migraine Headaches Were a Severe Impairment at Step Two.**

The first assignment of error relates to the ALJ's assessment of Petitioner's migraine headaches. Despite a well-documented history of migraines dating back to at least 2007, and despite uncontroverted testimony that Petitioner had lost her prior job due to missing several days of work per month because of those headaches, the ALJ concluded that these headaches did not constitute a severe impairment at step two. This conclusion was error.

The ALJ stated that he had considered Petitioner's allegations regarding disabling headaches, but found that "recent work-ups for her neurological issues were normal per the new evidence submitted at C-13F and C-14 F, including MRI scans of the brain." (AR 12). The ALJ also noted that claimant had recently "told her treating physician, Allen Han, M.D. that she has a mild headache all day every day, but severe headaches two to three times per week; however, she also noted these headaches are effectively treated with medication." (Id.). These conclusions represented a serious misunderstanding of the relevant medical condition as well as serious misreading of the evidence.

The inquiry at step two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d at 1273, 1290 (9th Cir. 1996). The Ninth Circuit has held that an "overly stringent application of the severity requirement violates the [Social

**MEMORANDUM DECISION AND ORDER - 8**

Security] Act by denying benefits to claimants who do [or who potentially might] meet the statutory definition of disabled." *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994). An impairment is considered severe at Step Two if it has "more than a minimal effect on an individual's ability to do basic work activities." *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ's ruling at step two effectively required Petitioner to provide "objective" evidence for her migraine headaches when no such evidence would have been attainable. As numerous courts, including the Ninth Circuit, have held, it is error to require objective evidence for conditions (like fibro-myalgia or migraine) that elude precise measurement. *See, e.g. Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2nd Cir. 2003) (holding that ALJs cannot require "objective" medical evidence for conditions that are not amenable to definitive diagnosis, such as fibromyalgia). As one sister court has explained, "migraine headaches are a common malady that are readily diagnosed through the evaluation of symptoms. They are difficult to control with or without medication. . . . No diagnostic tests are useful, except to exclude other causes." *Dalley v. Commissioner of Social Security,* 2006 WL 2578269 at * 7 (N.D. Cal. 2006). According to the most recent online version of the Merck Manual, "doctors diagnose migraines when symptoms are typical and results of a physical examination are normal. . . . No procedure can confirm the diagnosis. If headaches have developed recently or if certain warning signs are present, computer tomography (CT) or magnetic resonance imagine (MRI) of the head is often

**MEMORANDUM DECISION AND ORDER - 9**

done and a spinal tap (lumbar puncture) is sometimes done to exclude other disorders."[1] Indeed, the relevant records from Petitioner's treating neurologist indicate that the MRI and other tests she underwent in 2013 were being used *to rule out* several potentially disastrous conditions, such as tumor or stroke. Yet the ALJ's decision to discount Petitioner's migraines was based partially on the fact that she had a normal MRI scan. In relying on the absence of clinical findings (including in the MRI) as a basis for ruling that her migraines were not severe, the ALJ effectively held Petitioner to standards of proof that were impossibly high, and completely inconsistent with well-understood medical facts.

The ALJ's second reason for finding that Petitioner's migraines were not severe at step two rested upon a comment from Petitioner's treating neurologist, Dr. Allen Han, that her migraines were "well-controlled with medication." This reasoning was also contrary to the medical evidence under review.

Petitioner has a history of migraines dates back to at least 2007. At the hearing before the ALJ, she testified that during the 2007 time frame, she had to leave her job because she was missing too much work due to those headaches. (AR at 36). Further, records from Saltzer Medical Group (which provided Petitioner's primary care) dating from 2010 indicate that her headaches were *not* well-controlled at that time, (AR 510), and there are also references in these medical records to "intractable migraines." (AR

---

[1] http://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/ headaches/migraines. (Accessed August 3, 2016).

**MEMORANDUM DECISION AND ORDER - 10**

471, 473, 493, 495). Two years later, in July of 2012, records from Salzer describe Petitioner as having had "persistent headaches since 2007" and indicate also that she has had "significant difficulty controlling the headaches with various medications." (AR 452-453). Records from May of that year describe a longstanding history of migraines and indicate that "patient has not found a medication that works, she continues to have a constant headache most days." (AR 473). She described her pain that day as being "9 on a pain scale of 10 being the worst." (*Id.*).

During the early part of 2012 Petitioner saw Dr. Han, a neurologist, for her migraines as well as for her fibromyalgia and various other conditions. (AR 519-536). Dr. Han's records first mention migraines on January 2012. On that date, Dr. Han increased her dosage of Effexor (a painkiller) to a total of 225 mg per day. (AR 528). Six weeks later, she returned for follow up, and Dr. Han noted that "since increase in dosage, she has had vertigo and nausea" and that this was "most likely related to increasing the dosage of Effexor." Several weeks later, on June 15, 2012, she saw Dr. Han again, and he noted:

> Leonora returns for follow-up regarding chronic daily headaches. She has headaches all day, every day. They are usually in the 3-4/10 range. However, on 2-3 occasions each week, she has severe headaches in the 8-9/10 range for which she treats with Tramadol, Oxycodone, and/or subcutaneous Sumatriptan. This combination is effective and well-tolerated.

(AR 525). It was this record, and in particular, Dr. Han's comment that the particular combination of medication that Petitioner was on that day was "effective and well tolerated," that the ALJ relied upon in concluding that Petitioner's headaches were non-

**MEMORANDUM DECISION AND ORDER - 11**

severe.

Although it is generally true that a condition that is effectively controlled with medication will not qualify as a severe impairment at step two, the ALJ's overarching reliance upon Dr. Han's statement, on the facts of this case, was error. To begin with, Dr. Han's statement, when read in context, clearly does not mean that Petitioner was pain free, or even that the pain from her migraines was particularly well-controlled as a general matter. When Dr. Han's comments are read in their proper context, the word "effective" clearly means that this particular combination of medications is only "effective" in bringing the most severe headaches the Petitioner was experiencing at that time under control. However, the obvious inverse implication of that statement is that Petitioner was still experiencing severe headaches, with pain at an eight or nine on a scale of ten, two or three times a week. Yet the ALJ appeared to view Dr. Han's statement as evidence that Petitioner's migraines were nothing more than a *de minimis* impairment that could be controlled by medication, in the same way that glasses can correct nearsightedness. That interpretation, however, is simply not supported by Dr. Han's records, or by the overall medical history, which very clearly demonstrates that Petitioner's migraines were a significant impairment that she struggled for years to treat.[2]

_____

[2] In the review of the ALJ's decision, the Commissioner makes several additional arguments as to why the ALJ's decision at step two should be affirmed, but none is sufficient. First, the Commissioner points to records from numerous doctor visits which note that Petitioner was not currently suffering from headaches, or which fail to mention headaches at all. (AR 427-28; 435-36, 441, 446, 480-21, 497-500, 507). However, a review of these records discloses that they all relate to medical visits that were prompted

Nor was the ALJ's error harmless. In making the argument that any error at step two was harmless, the Commissioner relies on two cases that stand for the proposition that error at step two can be found harmless, as long the ALJ finds in a claimant's favor at step two and considers the limitations of the rejected impairments throughout the remainder of his or her analysis. *See, Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007); *Conley v. Comm'r of Social Security Admin.,* 321 Fed. App'x. 575, 577-78 (9th Cir. 2009). This reasoning does not support affirming the ALJ's decision, because, unlike in *Lewis* and *Conley,* the ALJ in this case simply did not consider Plaintiff's headaches in the remainder of his analysis at steps three and four. Likewise, the Commissioner's argument that Petitioner somehow failed to identify a "single credible functional limitation resulting from her headaches" is without merit. The medical records and her own testimony amply demonstrated that the headaches were a significant impairment to her ability to carry out the normal activities of daily living, and that also affected her ability to work.

**2.      The ALJ's Credibility Determination**

Petitioner next argues that the ALJ's adverse credibility determination was flawed.

---

by conditions having absolutely nothing to do with headaches, including episodes of chest pain, wheezing, joint pain, high blood pressure, an eye infection, as well as routine medical visits for things such as medication checks or pap smears. Failing to mention headaches during medical visits that were meant to address other conditions does not prevent the headaches from being found severe as step two. In making this argument, the government simply ignores the extensive evidence that Petitioner's migraines were a difficult-to-manage problem that she suffered from for years.

Plainly, the ALJ's error at step two in dismissing Petitioner's migraines as a severe impairment may have affected any overall assessment of her credibility, and for this reason alone, the adverse credibility determination would require a remand. However, the Court agrees with Petitioner that the ALJ's adverse credibility determination was fundamentally flawed in other ways, separate and apart from any effects the error at step two may have had on the ALJ's subsequent analysis.

Because the record contained evidence of a number of medically determinable impairments that could give rise to Petitioner's described symptoms, and because there was no evidence that Petitioner was malingering, the ALJ was required to make specific findings as to her credibility and to identify clear and convincing reasons for each finding. *Robbins v. Massanari,* 466 F.3d 880, 883 (9th Cir. 2006).  The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit a claimant's testimony." *See, e.g. Norris v. Colvin,* ___F.Supp.3d___, 2016 WL 410000 (E.D. Washington 2016) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir.1991).  "If there is no affirmative evidence that the claimant is malingering, the ALJ must provide 'clear and convincing' reasons for rejecting the claimant's testimony regarding the severity of symptoms.*" Id*. (quoting *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). *See also, Robbins v. Social Sec. Admin,* 466 F.3d 880 (9th Cir. 2006); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ's decision regarding Petitioner's lack of credibility rested on three

**MEMORANDUM DECISION AND ORDER - 14**

factors: first, a perceived discrepancy between her subjective symptoms and her activities

of daily living; second, a perceived discrepancy between her subjective symptoms and the

overall medical evidence; and third, her purported failure to follow treatment

recommendations for her obesity. (AR 17).  The Court addresses each of these issues in

turn.

### a.      Activities of Daily Living

Discrepancies between a claimant's assertions of disability and evidence as to her

daily living habits may be used to support an adverse credibility finding and, here, the

ALJ held that:

> [T]he claimant has reported an extremely limited lifestyle due to her physical and
> mental impairments; yet, throughout the time period at issue, she has been able to
> independently perform her activities of daily living, including caring for her own
> personal needs; light household chores, including vacuuming and dishes; laundry,
> preparing meals; some sewing and scrap-booking; driving; and shopping, albeit
> limited. . . . All of these activities are highly inconsistent with claimant's allegation
> of daily pain and of total disability.

(AR. 17). This assessment, however, was completely inconsistent with the actual

evidence in the record and the testimony from Petitioner herself.

In a function report that she filled out in October of 2011, Petitioner described a

significantly circumscribed daily routine. For example, she stated that she prepares meals

for herself and her family only one or two times a week, and starts a load of laundry about

as often. (AR 278). She does not do housework or yard-work, she goes outside only about

two or three times a week, and that when she does go out, she does not go alone because

she never knows when a severe headache might strike. She also explained that she goes

**MEMORANDUM DECISION AND ORDER - 15**

grocery shopping only about one or two times a month, and sometimes has to leave the shopping cart and go home due to her headaches. (AR 279). She engages in the hobbies she enjoyed prior to the alleged onset of disability, such as sewing or scrap-booking, but only about once or twice a month because the noise and movement can trigger pain. (AR 280).

The Petitioner's testimony at the hearing before the ALJ was consistent with the claims made in the function report, in that it also depicted an extremely circumscribed lifestyle. (AR 35-44). Yet, the ALJ relied on this very evidence to arrive at an adverse credibility finding, citing a perceived divergence between Petitioner's subjective symptoms and her supposedly greater ability to carry on the normal activities of daily living.

The Ninth Circuit has cautioned against a too rigid reliance on the activities of daily living as a means undermining a claimant's credibility and denying benefits. *See, Garrison v. Colvin,* 759 F.3d 955, 1016 (9th Cir. 2014) (observing that a claimant is not required to be "utterly incapacitated" in order to be entitled to benefits, and that not all at-home activities are easily transferrable to the workplace). In this case, Petitioner's activities amounted to little more than attempting chores a couple of times a week and leaving the house for errands a few times a month, activities that she was often not able to complete. This minimal level of activity does not reflect someone engaged in a relatively normal lifestyle in terms of household chores and other normal activities of daily living. While  Petitioner was not literally confined to bed all day long, the uncontroverted

**MEMORANDUM DECISION AND ORDER - 16**

description of her own activity level suggests that she was actually not far off that mark.

Thus, the ALJ's assessment of Petitioner as someone who could perform the normal

activities of daily living does not find *any* support in the record.

### b.  Subjective Complaints of Pain Compared to Medical Records

In determining that the medical evidence did not support Petitioner's subjective

complaints, the ALJ stated:

> In this case, the claimant's complaints far exceed any acceptable, objective
> medical evidence of a physical source for the degree of impairments
> alleged. The undersigned is aware that the claimant has a history of pain
> due to her fibromyalgia and degenerative disc disease and secondary
> emotional issues; however, as discussed above in the description of medical
> evidence, physical and mental evaluations and diagnostic findings have all
> been within normal, or at most, mild limits, she receives no mental health
> treatment, she has required no periods of hospitalization, surgery or
> physical therapy, medications have been a successful treatment for her pain,
> she requires no assistive device to ambulate and no physician has advised
> her to significantly reduce her activities of daily living.

(AR 17).

Many of these stated justifications are either contrary to the evidence or simply

illogical in the context of Petitioner's fibromyalgia diagnosis. As with migraines,

fibromyalgia cannot be diagnosed with the kind of objective tools (such as an MRI) that

can be used to pinpoint other disorders. *See, e.g. Rollins v. Massanari,* 261 F.3d 853 (9th

Cir. 2001). *See also, Kasinger v. Colvin,* 2016 WL 344467 at *3 (C.D. California 2016),

and cases cited therein. Thus, where the ALJ required such objective evidence for

Petitioner's fibromyalgia, his decision was in error. Further, even though fibromyalgia is

not diagnosable with objective evidence, certain clinical findings (namely, the presence of

**MEMORANDUM DECISION AND ORDER - 17**

multiple "tender points" on the body that reveal themselves with palpation) are strongly associated with the disorder. *See, e.g. Satterwaite v. Astrue,* 781 F.Supp.2d 898 (D. Ariz. 2011). Petitioner's own evaluation resulted in a score of 16 out of 18 "tender points." Thus, the ALJ's decision overlooked the fact that she had actually provided the only possible clinical evidence of fibromyalgia under the circumstances. (AR 453). Along the same lines, the ALJ's reliance on the fact that Petitioner had never undergone surgery is also flawed, given that fibromyalgia has no surgical cure. The same is true of the ALJ's reliance on the fact that no doctor had instructed Petitioner to reduce her activities of daily living, because the uncontroverted evidence shows that Petitioner's activities were already extremely curtailed.[3]

### c.    Obesity

Another clear error impacting the adverse credibility determination stems from the ALJ's assessment of Petitioner's obesity. On this point, the ALJ stated:

> the claimant's morbid obesity is obviously hampering her overall well-being and is obviously the major factor for most of her problems and complaints. However, she has consistently been non-compliant with treatment recommendations, that is, diet and exercise to lose weight as well as bariatric surgery. The claimant's failure to comply with these recommended forms of treatment suggests that she is not as disabled as alleged.

(AR 17). The decision to base an adverse credibility determination in part upon

---

[3]  It is technically possible that the ALJ intended some of the comments discussed herein to refer to Petitioner's osteoarthritis rather than her fibromyalgia. However, it is impossible for the Court to discern whether this is the case, and clear and convincing evidence is required to support an adverse credibility determination when there is no evidence of malingering. *Robbins,* 466 F.3d at 883. The ALJ's "one-size fits all" reasoning fails this standard.

**MEMORANDUM DECISION AND ORDER - 18**

Petitioner's alleged non-compliance with diet and exercise regimens, as well as her failure to undergo bariatric surgery, was erroneous. The Ninth Circuit addressed this very issue in *Orn v. Astrue,* which held:

> Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. In the case of a complaint of pain, such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief. But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense. This second case is probably best exemplified by a claimant whose obesity adversely affects his or her health and activities. See S.S.R. 02–1p at 9 (defining "prescribed treatment" narrowly and stating that failure to follow treatment for obesity will "rarely" affect disability determinations). Thus, the failure to follow treatment for obesity tells us little or nothing about a claimant's credibility.

495 F.3d 625, 639 (9th Cir. 2007). Nor does Petitioner's decision not to undergo a sometimes risky elective procedure provide a basis for undermining her credibility.[4]

    For all these reasons, the ALJ's assessment of Petitioner's credibility is not supported by clear and convincing evidence.

## 4.  Testimony of Treating Neurologist Allen Han.

    Petitioner next argues that the ALJ erred in discounting the opinions of her treating neurologist, Dr. Allen Han. In particular, she argues that the ALJ failed to properly credit the residual functional capacity assessment, in which Dr. Han opined that Petitioner could

---

[4] Petitioner testified at the hearing that she had at one point had bariatric surgery scheduled, but cancelled it because her husband had a heart attack. (AR 37-39).

**MEMORANDUM DECISION AND ORDER - 19**

not complete a forty-hour workweek due to her impairments. In this RFC assessment, Dr.

Han said that Ms. Hansen could sit for a maximum of two hours during an eight-hour

workday, could walk or stand a maximum of one hour, and that she needed to lie down

for a total of four hours during the same eight-hour period. (AR 420). Dr. Han also noted

the fact that Ms. Hansen had missed over seven days per month at her previous job, and

stated that she "experiences pain during all aspects of life," and that while some days

were better than others, she was "never pain free." (*Id.*).

  In rejecting Dr. Han's assessment of Petitioner's functional limitations, the ALJ

wrote:

> [T]he undersigned Administrative Law Judge is not accepting these
> opinions as controlling as they are not well supported by medically
> acceptable clinical and diagnostic techniques nor are they consistent with
> the rest of the medical evidence, which reflects normal or at most mild
> limits. Moreover, the undersigned sees no objective basis in Dr. Han's own
> treatment notes for the extreme limitations he imposes, even on the same
> day he completed the above questionnaire. (See, Exh C-14F pgs. 1-2). For
> example, aside from a finding of diminished sensation in the L5 and S1
> distributions suggestive of radiculopathy, her neurological examination was
> normal. Her work-up for TIA was negative. He did suspect arthritis in her
> fingers but made no definitive diagnosis and referred her back to her
> primary care physician without further work-up. Also the undersigned notes
> these opinions encroach on areas reserved to the Commissioner.

AR 18-19. The ALJ also noted that Dr. Han's opinions were not entitled to significant

weight because those opinions were based on claimant's subjective complaints, which in

turn were not supported by objective findings.

  This reasoning was unsound. As explained above, the ALJ's credibility

determination was itself flawed, and so Dr. Han's opinions cannot be discounted on the

**MEMORANDUM DECISION AND ORDER - 20**

basis that they incorporated the Petitioner's own testimony. Likewise, the notion that Dr. Han's opinions were somehow inconsistent with the overall medical evidence simply cannot be supported unless one utterly discounts the possibility of disabling headaches, as the ALJ did at step two. The rest of the ALJ's reasoning regarding Dr. Han is somewhat difficult to assess, due to his failure to provide more than minimal citations to the record. However, the primary remaining reason for rejecting Dr. Han's RFC assessment appears to be that Petitioner's extensive neurological and cardiac work-up did not reflect anything unusual. (AR 519-520). Although the Court has addressed in earlier parts of this opinion the problem with the ALJ's relying too heavily on the perceived need for objective medical findings (given the nature of Petitioner's ailments) this particular aspect of the ALJ's opinion involves somewhat different issues factually, and thus merits additional discussion.

The Court has reviewed the work-up to which the ALJ was referring in the above-quoted text. In addition to the TIA work-up,[5] the Petitioner also underwent a number of other tests with Dr. Han, all as part of his effort to rule out the possibility of heart disease, stroke, epilepsy, and other potentially catastrophic conditions. These tests included: 1) a brain MRI, performed with and without contrast; 2) an electro-encephalogram or EEG; 3) a carotid duplex evaluation, and 4) echo-cardiogram.[6]  These tests yielded essentially

[5]   TIA refers to a transient ischemic stroke.

[6] According to one reputable online source, an EEG measures electrical activity in the brain and can be used to detect epilepsy or other type of seizure activity. *See* *http://www.webmd.com/epilepsy/electroencephalogram-eeg-21508.*  (Accessed August 10,

**MEMORANDUM DECISION AND ORDER - 21**

normal results, but such evidence pertains to whether Petitioner was suffering from stroke, seizure, embolism, or cardiac problems of any kind. (AR 519). Given the nature of the medically determinable impairments that Petitioner did have, the fact that she was not having a stroke, seizure, or a heart attack is irrelevant to the evaluation of Dr. Han's opinions about her overall functional capacity.

Nor do the opinions of various state agency consultants contain substantial evidence to support the ALJ's decision. It is a well-settled that the opinion of a non-examining physician cannot, by itself, constitute substantial evidence justifying the rejection of a treating physician's opinion. *See, e.g., Ryan v. Commissioner of Social Security,* 528 F.3d 1194, 1202 (9th Cir. 2008). In this case, the opinions of the state agency consultants themselves were based on the same flawed logic as the ALJ's decision, i.e. the lack of significant neurological findings and the erroneous perception that the claimant's daily activities were somehow inconsistent with her claims of total disability. (AR 97 - 120).

## 5.   Remedy

The final issue is whether to remand this case to the Commissioner for further proceedings or instead, to direct that the Commissioner immediately enter an award of

---

2016). According to another source, a carotid artery duplex scan is used to detect blockages in the carotid artery that leads from the heart to the brain. See, *www.hopkinsmedicine.org/ healthlibrary/test_procedures/cardiovascular/carotid_artery_duplex_scan_92,p07661.* (Accessed August 10, 2016). An echo-cardiogram is used to detect heart disease. *See, http://www.mayoclinic.org/tests-procedures/echocardiogram/basics/definition/PRC-20013918.* (Accessed August 10, 2016).

**MEMORANDUM DECISION AND ORDER - 22**

benefits. "Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded. The Social Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a decision by the Commissioner with or without remanding the cause for a rehearing" under 42 U.S.C. § 405(g). *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014). The issue of whether to remand for further proceedings or to require that an immediate award of benefits be entered depends on the utility of further proceedings. *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004), and the question of whether further proceedings would be useful in turn often depends on whether evidence that the ALJ improperly discounted should be credited as true as a matter of law. *Varney v. Sec'y* of HHS, 859 F.2d 1396, 1400 (9th Cir.1988).

In *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit clarified the scope of the judicial power to remand for an award of benefits and the related "credit as true" rule. The Court held:

> Since *Varney II,* we have applied the credit-as-true rule in nearly two dozen published opinions. In those cases, we have developed a workable and stable framework for applying the credit-as-true rule. Specifically, we have devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

759 F.3d 995, 1019-20. The *Garrison* holding allows for some flexibility in the

**MEMORANDUM DECISION AND ORDER - 23**

application of these standards, however, and even if all the conditions for the application of the "credit as true" rule are satisfied, a district court may still remand for further proceedings if the "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021; *see also Treichler v. Commissioner of Soc. Sec.,* 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations and quotations omitted). In evaluating which kind of remand to issue, courts must "consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.,* 775 F.3d at 1104. The decision as to which kind of remand to enter is within the discretion of the district court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).

Petitioner meets all elements of the credit as true test. Not only did the ALJ fail to provide legally sufficient reasons for rejecting the Petitioner's own testimony as to her subjective pain symptoms, he also failed to provide a sufficient legal basis for rejecting the opinions of Dr. Han. Moreover, if Dr. Han's opinions and Petitioner's subjective testimony opinions were credited as true, there would be no doubt that Petitioner would be disabled. At the administrative hearing, the ALJ asked the Vocational Expert("VE") several questions about the effect that restrictions similar to those identified by Dr. Han would have had on Petitioner's employability. In response to this inquiry, the VE testified that an individual who had to take unscheduled breaks to lie down, who would be off task up to an hour a day due to headaches and chronic pain, and who might miss two to three

**MEMORANDUM DECISION AND ORDER - 24**

days of work per month, would not be able to hold down any jobs that are available in the national economy. (AR 46-47). Accordingly, a person with limitations similar to those identified by Dr. Han would not be employable.[7]

That leaves the first element of the *Varney/Garrison* test to consider: whether the record as a whole has been adequately developed and whether a remand would serve a useful purpose. The Commissioner argues that the record overall creates serious doubts as to whether Petitioner is actually disabled, but the Court disagrees. In making this argument, the Commissioner relies upon the same evidence discussed previously discussed, namely the boilerplate statements in various medical records indicating that the claimant was in no acute distress, or that she was not experiencing headaches on a particular day, during various doctor visits when she was seeking treatment for wholly unrelated conditions. For all the reasons the Court identified in section B1, supra, these records do not provide substantial evidence to support the ALJ's decision to deny benefits, nor do they create substantial doubt as to whether the Petitioner is disabled. The Court cannot discern any meaningful conflicts, ambiguities, gaps in the evidence, or factual issues left to be resolved. For these reasons, Petitioner's entitlement to benefits is clear and a remand would therefore serve no purpose, other than the impermissible purpose of allowing the ALJ a second opportunity to consider evidence that was

---

[7] Additionally, the ALJ's hypothetical questions to the VE did not take into account the full extent of the limitations identified by Dr. Han, who opined that claimant needed to lie down for a total of *four* hours in an eight hour period. Even with the imperfect match between the ALJ's hypotheticals and Dr. Han's actual opinions, the VE testified that the less severe restrictions would still result in Petitioner being unemployable.

**MEMORANDUM DECISION AND ORDER - 25**

erroneously discounted. The Court is mindful of the admonishment in *Garrison* against results which create an unfair "heads we win, tails let's play again" incentive for the Commissioner when it comes to deciding issues related to the weight to be accorded to a doctor's opinions or a claimant's subjective pain testimony. *Garrison,* 759 F.3d at 1022-23.

**CONCLUSION**

For all the foregoing reasons, the Petition for Review (Dkt. 1) is **GRANTED**, and the case is **REMANDED** to the Commissioner under 28 USC § 405(g) for an immediate entry of benefits.

**SO ORDERED.**

DATED:  September 1, 2016

_____
**Honorable Ronald E. Bush**
**Chief U. S. Magistrate Judge**

**MEMORANDUM DECISION AND ORDER - 26**